UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARKEL AMERICAN INSURANCE COMPANY                                    PLAINTIFF

V.                                                       CIVIL ACTION NO: 3:10-CV-702-DPJ-FKB

TRI-MISS SERVICES, INC.; FIRESTONE
BUILDING PRODUCTS COMPANY, INC., LLC;
EUGENE FRAZIER                                                           DEFENDANTS

ORDER

This insurance-coverage dispute is before the Court on Plaintiff Markel American

Insurance Company's ("Markel") Motion for Summary Judgment [30].  Defendant Tri-Miss

Services, Inc. ("Tri-Miss") has responded in opposition [37].  The Court, having considered the

submissions of the parties and the applicable law, finds that Markel's Motion [30] is well taken

and should be granted.

I.       PRELIMINARY MATTERS

As an initial matter, the Court rejects Tri-Miss's argument that Markel's motion is

premature.  Rule 56(b) states that "a party may file for summary judgment at any time . . . ."  It is

well established in the Fifth Circuit that "Rule 56 does not require that any discovery take place

before summary judgment can be granted." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281,

1285 (5th Cir. 1990).

Although a party may seek summary judgment at any time, Rule 56(d) provides a safe

harbor for nonmovants who can demonstrate that discovery is necessary to produce affidavits or

other evidence in compliance with Rule 56(c).  Here, Tri-Miss embeds a Rule 56(d) motion

within its Response.  But Local Uniform Civil Rule 7(b)(3)(C) of this Court provides that a

response to a motion for summary judgment should not contain additional motions within the

same filing: "[A]ny motion must be an item docketed separately from a response."

Even so, Tri-Miss failed to present the necessary information to justify Rule 56(d) relief.

Aside from the lack of an affidavit or declaration supporting a Rule 56(d) motion, the rule "may

not be invoked by the mere assertion that discovery is incomplete; the opposing party must

demonstrate how the additional time will enable him to rebut the movant's allegations of no

genuine issue of material fact." *Leatherman v. Tarrant County Narcotics Intelligence &*

*Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994) (quotation marks and citation omitted);

*Washington*, 901 F.2d at 1285 (affirming denial of Rule 56(d) motion and noting that

"nonmovant may not simply rely on vague assertions that discovery will produce needed, but

unspecified, facts"); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (same).

Finally, although some factual disputes may exist, this order is decided on questions of

law, and it is not apparent how additional discovery would advance Tri-Miss's case. *See*

*Fullerton v. Merlin C. Reiser & Merco, L.L.C.*, No. 3:08CV151 DPJ-JCS, 2008 WL 5246128, at

*2 n.2 (S.D. Miss. Dec. 12, 2008) (denying Rule 56(f) request and noting failure to demonstrate

how discovery would enable Plaintiff to respond to purely legal issues).  Nevertheless, Tri-Miss

was given an extension of time to respond to the summary-judgment motion; the parties

continued discovery after Markel's summary-judgment motion; Tri-Miss never sought to file a

surreply or otherwise supplement the record; and the discovery deadline has now expired.  The

summary-judgment motion is therefore ripe for consideration.

II.     FACTS AND PROCEDURAL HISTORY

In October 2010, Defendant Firestone Building Products Company, Inc.  ("Firestone")

filed suit in federal court against Tri-Miss and Eugene Frazier, Firestone's former employee.

Firestone's suit ("underlying complaint") alleges that in April 2010, Frazier "admitted to taking,

without permission, 13,750 pounds of copper and aluminum from [Firestone's] Jackson plant

and selling the copper and aluminum to Tri-Miss Services in Jackson, Mississippi, throughout

the period of September, 2009, through January, 2010."  Pl.'s Mot. Summ. J. [32] Ex. A,

Firestone Compl. ¶ 9.  The underlying complaint goes on to state that "Tri-Miss purchased an

extensive amount of copper and aluminum that was wrongfully taken from the Jackson plant by

Frazier and sold to Tri-Miss," and "[t]he copper and aluminum sold to Tri-Miss totaled

approximately $147,793.94."  *Id.* ¶ 10.  The underlying complaint also alleges that Tri-Miss

committed the intentional tort of conversion:

> 12.     When Tri-Miss bought the stolen copper and aluminum from
> Frazier, Tri-Miss became liable to Firestone for conversion.  Under Mississippi
> law, a person who purchases or accepts the possession of stolen property is
> regarded as liable for the conversion thereof.  In addition to Tri-Miss purchasing
> the goods, Tri-Miss also appropriated the copper and aluminum and used it for its
> own purposes.  Thus, Tri-Miss has demonstrated an intent to exercise dominion
> and/or control over the copper and aluminum which is, in fact, inconsistent with
> Firestone's rights as the owner of the copper and aluminum.  Given the extensive
> amount of copper and aluminum that Frazier presented to Tri-Miss for sale, Tri-
> Miss should have realized that the source of the copper and aluminum was
> unlawful.  Thus, Tri-Miss acted in a positive way sufficient to constitute
> conversion and is liable to Firestone for conversion.

*Id.* ¶ 12.

Before suing Tri-Miss, Firestone made a claim for these damages, and Tri-Miss sought

defense and indemnity under its commercial general liability ("CGL") policies with Markel.[1]

Markel, however, concluded that it owed neither a defense nor indemnity under the policy terms.

The policy provides, in pertinent part, as follows:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.     Insuring Agreement
>
>     a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . .
>
>           . . . .
>
>     b.     This Insurance applies to "bodily injury" and "property damage" only if:
>          (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;
>
>           . . . .
>
> 2.     Exclusions
> This insurance does not apply to:
>
>           . . . .
>
>     j.     Damage to Property
>         "Property damage" to:
>
>          (4)    Personal property in the care, custody or control of the insured;
>
>           . . . .
>
> SECTION V – DEFINITIONS
>
>           . . . .
>
> 13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
>           . . . .
>
> 17.    "Property damage" means:
>
>           . . . .
>
>     b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

---

[1] Markel issued three successive CGL policies to Tri-Miss from 2007 to 2010. The Court will reference the policies collectively as "the policy" since the parties' briefs indicate that the relevant policy terms remained constant.

SECTION XXIV – DEFINITIONS

The following definitions are added:

1.      "Customers' goods" mean tangible personal property belonging to your customers and left with you for storage, service or repair.

SECTION XVII – PROPERTY DAMAGE – "CUSTOMERS' GOODS"

A.      Paragraph[] 4 . . . of Exclusion j. of SECTION I – COVERAGES, COVERAGE A does not apply to "property damage" to "customer's goods" while on your premises.

Pl.'s Mot. [32] Ex. B, Policy.

Markel now seeks a declaration of non-coverage for the indemnity and defense of Tri-Miss in Firestone's underlying lawsuit.  Markel has moved for summary judgment on a number of grounds, and the Court finds that at least two are dispositive:  (1) whether Firestone's underlying complaint alleges damages caused by an "occurrence" and (2) whether coverage is excluded for damage to personal property in the insured's custody or control.  Finally, Tri-Miss argues that even assuming the risk was not insured or was excluded, Markel's bad-faith failure to investigate Firestone's claims waived the denial of coverage.

 The Court has diversity jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1332 (2006).  As such, Mississippi law applies to the substantive issues.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

III.    STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-

moving party must then "go beyond the pleadings" and "designate 'specific facts showing that

there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations,

speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute

for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such

contradictory facts exist, the court may "not make credibility determinations or weigh the

evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

IV.     ANALYSIS

"Under Mississippi law, the determination of whether a liability insurance company has a

duty to defend depends upon the language of the policy." *U.S. Fid. & Guar. Co. v. Omnibank*,

812 So. 2d 196, 200 (Miss. 2002) (citation omitted). "The obligation of the insurer to defend is

to be determined by analyzing the allegations of the complaint or declarations in the underlying action."  *Id.* (citations omitted).

> A.    Coverage

The policy covers "property damage" caused by an "occurrence."  Pl.'s Mot. [32] Ex. B, Policy at 94.  The policy further states that "'occurrence' means an accident."  *Id.* at 106.  The Court will assume, without deciding, that Firestone seeks covered "property damage." Regardless, the conversion claim does not relate to an "accident."

Conversion is an intentional tort.  *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 689 (Miss. 2009).  It "is the unlawful and wrongful exercise of dominion, ownership, or control over the personal property of another, to the exclusion of the same rights by the owner." *Textile Supplies, Inc. v. Garrett*, 687 F.2d 123, 128 n.9 (5th Cir. 1982) (citations omitted); *see also Terrell v. Tschirn*, 656 So. 2d 1150, 1153 (Miss. 1995).  "Although '(t)he mere purchase of personal property in good faith from a person who has no right to sell it is not a conversion,' a conversion nevertheless occurs when 'the title of the lawful owner is made known and resisted *or the purchaser exercises dominion and control over the property by use, sale, or possession*." *Textile Supplies*, 687 F.2d at 128 (citations omitted) (emphasis added).

The acts allegedly creating liability for conversion—purchase, dominion, and use of the disputed metals—were all intentional from Tri-Miss's standpoint.  The case is therefore in line with *United States Fidelity & Guaranty Co. v. Omnibank*, 812 So. 2d 196, 201 (Miss. 2002) (holding that "the term 'accident' refers to [the insured's] action and not whatever unintended damages flowed from that act") and *Allstate Insurance Co. v. Moulton*, 464 So. 2d 507 (Miss. 1985) rather than *Architex Association, Inc. v. Scottsdale Insurance Co.*, 27 So. 3d 1148, 1157

(Miss. 2010) (insured general contractor sued for acts of its subcontractor).  Also unlike

*Architex*, there is no suggestion that the policy otherwise provided coverage for the risk.

*Architex*, 27 So. 3d at 1161 ("Plainly, an interpretation of the policy which views the term

'occurrence' categorically to preclude coverage for the simple negligence of a subcontractor

subverts the plain language and purpose of the CGL part of these policies.").

Since Firestone's underlying complaint does not allege damages caused by an

"occurrence" or accident, Firestone's allegations are not covered by the CGL policy, and

Markel's Motion for Summary Judgment [30] should be granted.  It follows that Markel has no

contractual obligation to defend or indemnify Tri-Miss for these claims.  *Moeller v. Am.*

*Guarantee and Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996) ("[a] liability insurance

company . . . clearly has no duty to defend a claim outside the coverage of the policy.").

B.      Exclusion

Even assuming Firestone's suit relates to "property damage" flowing from an

"occurrence," the policy excludes coverage for property damage to "personal property in the

care, custody or control of the insured."  Policy Sec. I(2)(j)(4).  There is no dispute that Tri-Miss

at least controlled the copper and aluminum in its possession, but Tri-Miss contends that this

exclusion is ambiguous and otherwise subject to an exception.

As Tri-Miss notes, the policy fails to define the term "personal property."  That alone is

insufficient to establish ambiguity because "where the insurance policy does not provide the

definition for a term or phrase, those words are afforded their ordinary and popular meaning."

*Corban v. U.S. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009).   And "[t]he mere fact that the

parties disagree about the meaning of a contract does not make the contract ambiguous as a

matter of law." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001).   Instead,  an insurance policy

is ambiguous "when the policy can be interpreted to have two or more reasonable meanings."  *J*

*& W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).

"[I]nsurance policies which are clear and unambiguous are to be enforced according to their

terms as written," and "the plain terms of the insurance contract should be binding and

controlling."  *Sennett v. U.S. Fid. & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000).   Finally, the

trial court—not the jury—must determine the meaning and effect of an insurance contract if the

contract is clear and unambiguous.  *Jackson v. Daley*, 739 So. 2d 1031, 1041 (Miss. 1999)

(citing *Overstreet v. Allstate Ins. Co.*, 474 So. 2d 572, 575 (Miss. 1985)).

　　　Here, Tri-Miss claims ambiguity but never offers a reasonable interpretation of "personal

property" that supports coverage.  The term has generally been defined by the Mississippi

Supreme Court to "include[] everything the subject of ownership not being land or any interest

in land, as goods, chattels, money, notes, bonds, stocks and choses in action generally."  *Watson*

*v. Caffery*, 109 So. 2d 862, 866 (Miss. 1959) (citing 73 C.J.S. Property § 8, p. 170 ("The terms

'personal property' or 'personal estate' have, in law, a distinct technical meaning, which relates

to the nature of the property itself and distinguishes it from real property. They are terms of wide

signification, and in their broad and general sense include everything which is the subject of

ownership not coming under the denomination of real estate, and which has an exchangeable

value or goes to make up one's wealth or estate.'")).

　　　This definition is consistent with the definition provided by various dictionaries.

Webster's Dictionary defines "personal property" as "property other than real property

consisting in general of things temporary or movable . . .:  chattels."  Webster's Third New

International Dictionary 1687 (1993).  According to Black's Law Dictionary, "personal

property" is defined as, "[a]ny movable or intangible thing that is subject to ownership and not

classified as real property."  Black's Law Dictionary 1337 (9th ed. 2009), Property.  *See Anglin*

*v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 860–61 (Miss. 2007) (noting that dictionaries are

often consulted "[i]n determining the ordinary meaning" of contract terms).

These definitions also comport with the definition provided in the Mississippi Code for

interpreting statutes.  *See* Miss. Code Ann. § 1-3-41 ("The term 'personal property,' when used

in any statute, shall include goods, chattels, effects . . ." among other things).  And the

Mississippi Supreme Court has often interpreted that statute as applying to various property

interests held in the business context.  *See*, *e.g.*, *Guice v. Miss. Life Ins. Co.*, 836 So. 2d 756, 759

(Miss. 2003) (holding that insurance company's money paid to insured was personal property

under Mississippi's venue statute); *Green v. Winona Elevator Co.*, 319 So. 2d 224 (Miss. 1975)

(holding that soybeans were personal property).  In light of this broad authority, and absent a

reasonable countervailing interpretation, the Court finds that the term "personal property"

unambiguously includes the property at the heart of Firestone's suit.

Tri-Miss's only other argument is that an exception to Exclusion j(4) exists when the

exclusion is applied to "'customer's goods' while on your premises."  According to Tri-Miss,

Firestone's products were "customer's goods" and therefore the exclusion for personal property

in the custody or control of the insured is inapplicable.  The problem is that Section XXIV of the

policy defines "customers' goods" to "mean[] tangible personal property belonging to your

customers and left with you for storage, service or repair."  Tri-Miss has not suggested that the

products were in its control for "storage, service or repair," which nullifies the argument.

Accordingly, the Court finds that the care, custody, or control exclusion applies even if the claim

involves "property damage" caused by an "occurrence."

        C.      Waiver

According to Tri-Miss, Markel waived its right to claim that Firestone's damages did not

result from an "occurrence" or that coverage is otherwise excluded because Markel failed to

properly investigate the claim before denying coverage.  Although Markel made no reference to

the bad-faith counterclaim in its Motion for Summary Judgment, Tri-Miss presented the issue as

a defense to summary judgment, and Markel replied with record evidence contradicting the

factual basis for Tri-Miss's response.  In this posture, the bad-faith issue is ripe for

consideration.

Tri-Miss's argument hinges on the assertion that Markel denied coverage the same day it

received the claim.  But no reasonable juror could find that fact.[2]  In any event, Markel denied

---

      [2]Markel sent Tri-Miss a reservation of rights letter and a declination of coverage.  Both
letters are dated July 9, 2010, prompting Tri-Miss to argue that no investigation of coverage
occurred.  But Tri-Miss never suggests that it received these letters in that time frame, and the
record conclusively demonstrates that they were actually prepared and mailed on different dates.
For example, Markel has offered an unrebutted receipt showing that it sent the reservation letter
certified mail, return receipt requested, on July 12.  Pl.'s Reply [40] Ex. D.  That same document
shows a receipt signed by Tri-Miss on July 15.  *Id*.  The record also includes Markel's July 9,
2010, request for coverage analysis from counsel, *id*., Ex. B; the coverage analysis counsel
provided twelve days later on July 21, *id*., Ex. E; a July 26 email conveying the coverage
opinion, *id*., Ex. F; Markel's July 26 request that counsel prepare a declination letter, *id*. Ex. G.,
counsel's July 28 email transmitting the declination letter for Markel to present to Tri-Miss, *id*.
Ex. H; the receipt showing that Markel mailed the declination letter to Tri-Miss via certified
mail, return receipt requested, on July 28 and that Tri-Miss received the letter August 5, *id*., Ex.
K; and Markel's July 29 email with courtesy copy of the declination letter, *id*., Ex. I.  Based on
this record (which Defendant never contradicted), no reasonable jury could conclude that Markel
denied the claim on July 9, 2010.

coverage based on Firestone's allegations when applied to the contract language and applicable law. That analysis was correct and fails to reflect bad faith. *See supra*.

Even assuming Markel should have taken more time to investigate, "Mississippi law is clear that the doctrines of waiver and estoppel may not operate to create coverage or expand existing coverage to risks which, by the terms of the policy, are expressly excluded." *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 202 (Miss. 2002) (citations omitted). Tri-Miss attempts to avoid this tenant by citing *Twin City Fire Insurance Co. v. City of Madison, Mississippi*, wherein the Fifth Circuit examined an exception to the general rule. 309 F.3d 901 (5th Cir. 2002). But *Twin City*, is distinguishable. In that case, the insurer defended under reservation of rights and mishandled the reservation and the declination in ways that arguably prejudiced the insurer. According to the Fifth Circuit,

> When the alleged misconduct of the insurer concerns the duty to defend, the insurer may be liable despite an exclusion otherwise applicable. Upon withdrawal from the defense of an action, for example, an insurer may be estopped from denying liability under a policy, if its conduct *results in prejudice* to the insured.

*Id.* at 906 (emphasis added) (citing *S. Farm Bureau Cas. Ins. Co. v. Logan*, 119 So. 2d 268, 272 (Miss. 1960)).

Unlike *Twin City*, the record fails to reflect prejudice. Markel's reservation letter stated that Markel is "handling this matter under reservation of rights until" it can determine whether coverage exists. Pl.'s Reply [40] Ex. C. The letter further stated that Markel reserved and did not waive its right to decline coverage; that because no suit had been filed it was not assigning counsel; and that Tri-Miss had the right to retain independent counsel to advise it regarding the letter. *Id.* Significantly, Markel issued the reservation before suit was filed, and it denied coverage nearly six months before Firestone served Tri-Miss with process in January 2011. *See*

Def.'s Resp. [37] Ex. G at 3.  In any event, Tri-Miss never explains how Markel's actions

prejudiced its defense and never identifies any other reason for rejecting the general rule against

expanding coverage through waiver or estoppel.  Accordingly, the Court finds no such waiver.

V.      CONCLUSION

Based on the foregoing, Markel's Motion for Summary Judgment [30] is well taken and

should be granted.  Because Markel's Motion did not appear to include dismissal of the bad-faith

counterclaim, the opinion does not finally resolve the dispute, although as a practical matter it

resolves the issues.  Accordingly, the parties are instructed to confer and collectively advise the

Court by Friday, January 27, 2012 on the future handling of the matter.  The case is removed

from its current pretrial and trial settings.

**SO ORDERED AND ADJUDGED** this the 19th day of January, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE